UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRYSTAL BABBIN,

      Plaintiff,

                                    Case No. 1:25-cv-1794

v.

                                    Hon. Hala Y. Jarbou

LAURA MUIRHEAD,

      Defendant.

_____/

**OPINION**

Now before the Court is Plaintiff Crystal Babbin's motion to dismiss Defendant Laura Muirhead's counterclaims (ECF No. 13).  For the reasons below, the motion will be granted.

**I. BACKGROUND**

The village of Pentwater, Michigan, is a small town off the coast of Lake Michigan.  In the summer, its population grows with tourists.  In the late fall and early winter, it hosts "Christmas in the Village," an annual event where local businesses offer holiday-themed experiences for their shoppers.

Defendant Linda Muirhead was among the summertime tourists for many years who decided to buy a home in Pentwater.  In 2024, she designed a coin to be sold at a business during Christmas in the Village to help raise funds for the local schools.  On one side of the coin, she used a laser-cutter to engrave an image of the gazebo in the Village Green, one of Pentwater's parks.  She designed the image using "various sources," including a picture she had taken of the gazebo. (Answer ¶¶ 15-16, ECF No. 8.)

On November 28, 2024, the Facebook page "Pentwater Christmas in the Village" posted a picture of the coins with the gazebo image facing the viewer.  The caption read:

> Happy Thanksgiving!!! Tomorrow is your first opportunity to purchase this fun little coin Laura Muirhead was kind [enough to create] for Christmas in the Village. This coin will then get you one of the fabulous stocking[s] from Sew Let's Be Quilty!  That stocking will then be filled by 19 merchants, on December 14th.  The value will be over [$200].  I heard there are gift cards, ornaments, and so much more.  We only have 50 stockings[,] and all money raised will be given to Pentwater School for the track!

(Answer Ex. B, ECF No. 8-2.)

Sometime after the post, Plaintiff Crystal Babbin, the owner of Oldewick Post Gift Shoppe, commented on it with a warning: "This Artwork was taken from Oldewick Post.  It was purchased with the business."  (Answer Ex. C, ECF No. 8-3.)  She also reposted Pentwater Christmas in the Village's post, elaborating on her comment with a caption:

> People who support this coin [are] supporting cutting a small business.  This artwork was purchased when I purchased Oldewick Post Gift Shoppe.  This is one of the staples of my small business and how I make my living.  This hurts my heart that someone would tweak a design, put their name on it and pass it off as their own.  The Gazebo artwork has been in my establishment for over 20 years.
>
> This coin is being passed off as a donation to benefit the Pentwater school track, but [that doesn't] make it ethical.

(Answer Ex. D, ECF No. 8-4.)

On October 8, 2025, Babbin wrote a letter to the Village of Pentwater Downtown Development Authority (DDA), reiterating her concerns about the design on the coins:

> Dear DDA Members,
>
> Oldewick Post Gift Shoppe has paid for marketing and participated in The Christmas in the Village annually.  This has been a wonderful event to support Pentwater Village small businesses for the holiday shopping season.  On December 14, 2024[,] was the 1st annual Christmas Stocking Sock Hop fundraiser organized by a member.  Your member received money on the DDA's behalf for a fundraiser and distributed an unauthorized infringed coin of a 2-dimensional drawing of the "Pentwater Bandshell" produced by another participant.  This artwork was created by the previous owner's daughter, in 2001 for exclusive use at Oldewick Post Gift Shoppe for the use of repeat sales.  The participant scanned an item sold in my store and [lasered] commemorative coins with my business's artwork[,] affiliating it to her website.  I approached your member twice regard[ing] this[;] she mentioned that she helped make suggestions for the coin, that the merchant scanned the image,

2

that it was not my image, made reference to [how] it was changed 30% and that it was legal, she worked too hard and there was nothing I could do about it and she was going to continue to market the coin.  The participant tried to remove the image that has been in my business for 24 years.  Your member and participant refused to cease and desist resulting in legal action, attorney fees and hardship on my business and the original artist.  I am disappointed that facts [were] not checked.

I understand this was meant to be for a good cause, but the right thing was not done in this matter of the actual artist[, an] innocent person who had her artwork stolen from her in the name of a good cause, allowing someone else [to] put their name and business website on her work.  She cried when she found out what happened. She stated that she did the drawing off one of her Dad's photograph[s] for tabletop-ware for the store.  It was a memory she treasured.

I wish as a fellow shopkeeper and friend that I was not dismissed by your member. It could have been handled in a matter that would have worked for everyone. Customers relate the image to Oldewick Post Gift Shoppe[,] and [this incident] does not shed the light I would like for our Village.  Oldewick Post will not be able to contribute to the Christmas in The Village advertising.  The unforeseen legal expense has been taken away from the marketing budget for 2025.

The original pencil drawing is on file with my attorney, Bradley L. Smith at Endurance Law Group.  The artwork was copy written the moment pencil went to paper.  It is legally considered infringement even though your member felt she found a [loophole] with it not being registered at the time.

The artwork in mention "Pentwater Bandshell" or also known as the gazebo is now registered and is not to be used further for any DDA events (Case No. 1-14680492871).

Together we make a town[,] and I hope that moving forward there is more mindfulness and respect for [another's] business.

Thank you for your time,

Crystal Babbin

(Answer Ex. E, ECF No. 8-5.)

On December 15, 2025, Babbin filed this lawsuit against Muirhead for copyright infringement.  (Compl., ECF No. 1.)  She also requested declaratory relief to prevent Muirhead from using or registering the image on the coin as a trademark.  On January 23, 2026, Muirhead filed an answer along with counterclaims against Babbin for defamation and false-light invasion

of privacy.  (Answer, ECF No. 8.)  Babbin filed a motion to dismiss Muirhead's counterclaims (ECF No. 13), and Muirhead filed a response (ECF No. 18).

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim if it fails "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).

## III. DISCUSSION

### A. Defamation

To state a claim for defamation, the defamed party must allege: "(1) a false and defamatory statement concerning the [defamed party], (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005).

4

At the outset, Muirhead argues that she can maintain a defamation claim based on Babbin's comment and post on Facebook.  The Court finds that the statute of limitations bars that basis for relief.  The statute of limitations for a defamation claim is one year.  Mich. Comp. Laws § 600.5805(9).  "A defamation claim accrues when 'the wrong upon which the claim is based was done regardless of the time when damage results.'"  *Mitan*, 706 N.W.2d at 422 (Mich. 2005) (quoting Mich. Comp. Laws § 600.5827).  Muirhead filed her defamation claim on January 23, 2026.  Babbin made statements about the coins on Facebook more than a year before Muirhead filed her defamation claim.  (Answer ¶ 22.)  But Babbin sent her letter to the DDA only a few months before Muirhead filed her claim.  (*Id.* ¶ 28.)  So, although Muirhead is barred from bringing a defamation claim based on Babbin's statements on Facebook, she may bring a defamation claim based on Muirhead's letter to the DDA.

Muirhead argues that it is inappropriate to dismiss any potential defamation claims based on Babbin's Facebook activity.  (Resp. 6 (citing *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)).  But the Court is only dismissing defamation claims based on Babbin's Facebook activity as alleged in Muirhead's complaint.  And whenever a complaint affirmatively shows that a claim is time-barred, dismissal is appropriate.  *Cataldo*, 646 F.3d at 547.

The Court now turns to Babbin's letter to the DDA.  Muirhead identifies certain excerpts of the letter as false and defamatory:

- Your member [the business that sold the coins] received money on the DDA's behalf for a fundraiser and distributed an unauthorized infringed coin [with a] 2-dimensional drawing of the "Pentwater Bandshell" produced by another participant [Muirhead].

- This artwork was created by the previous owner's daughter.

- The participant [Muirhead] scanned an item sold in my store and [lasered] commemorative coins with my business's artwork affiliating it to her website.

- [T]he actual artist was an innocent person who had her artwork stolen from her in the name of a good cause, allowing someone else [to] put their name and business on her work.

(*See* Answer ¶ 29; Answer Ex. E.)  Muirhead also argues that, because a copyright violation is a crime under 17 U.S.C. § 506, these excerpts are defamatory per se.  Regardless of whether these excerpts are false or defamatory per se, the Court finds that Babbin's letter was qualifiedly privileged.

Qualified privilege protects a publisher's statement when the publisher had "an interest or duty to communicate otherwise defamatory statements to those having a corresponding interest or duty, whether of a legal, moral or social character." *Dadd v. Mount Hope Church*, 780 N.W.2d 763, 767 (Mich. 2010) (order) (Markman, J., concurring in part and dissenting in part).  "The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits." *Nuyen v. Slater*, 127 N.W.2d 369, 373 (Mich. 1964).  When a statement is protected by qualified privilege, the defamed party must allege actual malice instead of negligence.  *Peisner v. Detroit Free Press, Inc.*, 266 N.W.2d 693, 698 (Mich. Ct. App. 1978) (per curiam).

The elements of qualified privilege are (1) good faith, (2) an interest to be upheld, (3) a statement limited in scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner and to proper parties only.  *Bufalino v. Maxon Bros., Inc.*, 117 N.W.2d 150, 156 (Mich. 1962).  The parties disagree whether Babbin and the DDA had an interest to be upheld.  Babbin argues that she had a shared interest with the DDA while Muirhead argues that Babbin's interest was merely private.  The qualified privilege does not apply "where the interest at stake was a private one." *360 Const. Co., Inc. v. Atsalis Bros. Painting Co.*, 915 F. Supp. 2d 883, 896 (E.D. Mich. 2012) (collecting cases).  Whether an interest is shared or private is a matter of public policy

6

and depends on the issues at stake.  "The privilege thus afforded is not, . . . . as the mathematicians would put it, a constant." *Lawrence v. Fox*, 97 N.W.2d 719, 721 (Mich. 1959).

Whether there is a private or shared interest in warning a third party about unlawful behavior depends on the circumstances of a given case.  For instance, in *360 Construction*, a company that lost a bid on a government contract reported the winning bidder to the government agency for fraud that had allegedly occurred several years earlier.  915 F. Supp. 2d at 897. Although the company claimed it had a shared interest with the government agency to report fraud, the company's interest in reporting the fraud was private because, given the timing of the report, the company was only acting in an attempt to undercut its competitor.  *Id.* at 897-98.  In contrast, companies that report unlawful behavior may have a shared interest when, for example, they share an interest with a customer in protecting themselves from another customer's credit card fraud, *Richardson v. Home Depot Inc.*, No. 23-10560, 2024 WL 4270021, at *5 (E.D. Mich. Sep. 23, 2024), or they share an interest with a potential business partner to explain why a sale fell through due to an employee's embezzlement, *Ryniewicz v. Clarivate Analytics*, 803 F. App'x 858, 867 (6th Cir. 2020).  As pertinent here, courts have also found a shared interest when a copyright holder warns others of potential copyright violations.  *See, e.g.*, *Rossi v. Mot. Picture Ass'n of Am., Inc.*, No. Civ. 02-239, 2003 WL 21511750, at *4 (D. Haw. Apr. 29, 2003), *aff'd*, 391 F.3d 1000 (9th Cir. 2004) (third-party internet service provider "is interested in preventing sites hosted on its server from infringing on copyrights because [it] could be liable for such violations under certain circumstances"); *Maggio v. Liztech Jewelry*, 912 F. Supp. 216, 221 (E.D. La. 1996) (third-party sellers of allegedly copyrighted jewelry designs "had an interest in learning about" copyright holder's "concerns in order to avoid liability for selling infringing work").

Muirhead argues that Babbin only acted out of a private interest: to complain about Muirhead's alleged infringement and inform the DDA that she would not contribute to the event's marketing fund for next year.   But, taken in context in the entire letter, this is a narrow interpretation of the interests Babbin and the DDA had at stake.  *Smith v. Anonymous Jt. Enter.*, 793 N.W.2d 533, 548 (Mich. 2010) ("[A]llegedly defamatory statements must be analyzed in their proper context.")  The DDA has an interest in knowing about potential copyright violations for items sold to support its fundraising efforts and events.  Unlike the company in *360 Construction*, there are no facts alleged here to suggest that Muirhead acted solely out of private interest.

Setting interests aside, Muirhead also argues that it is too early to assess a question of intent, like good faith, on a motion to dismiss as part of the qualified privilege.  But it is appropriate to grant a motion to dismiss that raises an affirmative defense, like qualified privilege, when the allegations in a complaint establish the necessary facts to support the defense.  *See Estate of Barney v. PNC Bank*, 714 F.3d 920, 926 (6th Cir. 2013).  Indeed, courts have routinely handled questions of qualified privilege in response to a motion to dismiss.  *E.g.*, *Ryniewicz*, 803 F. App'x 858; *Saad v. Healthgrades Marketplace, LLC*, 788 F. Supp. 3d 809 (E.D. Mich. 2024); *Mero v. U.S. Figure Skating Ass'n*, No. 05-cv-73069, 2006 WL 163529 (E.D. Mich. Jan. 20, 2006).

Courts applying Michigan law do not analyze good faith as a separate element.  Instead, "[t]here is a presumption of good faith when a communication is qualifiedly privileged," and that presumption is only overcome when a plaintiff "show[s] that the statement was made with actual malice."  *Tarver v. Republican Women's Fed'n of Mich.*, No. 358812, 2022 WL 18006111, at *3 (Mich. Ct. App. Dec. 29, 2022).

Given the presumption of good faith, Muirhead must allege that Babbin acted with actual malice.  "A complaint asserting a defamation claim as to which the actual malice standard applies

must set forth facts establishing that the statements were made with malice to avoid dismissal." *Green v. Mason*, 504 F. Supp. 3d 813, 831 (S.D. Ohio 2020) (cleaned up). To set forth such facts, the complaint must include sufficient facts to infer that the publisher made a statement "with knowledge of the statement's falsity or reckless disregard of the truth." *Hieber v. Oakland County*, 136 F.4th 308, 326 (6th Cir. 2025) (cleaned up). Muirhead alleges that Babbin published the letter "with reckless disregard as to whether or not [her accusations] were false," (Answer ¶ 43), but she does not allege any facts to support that conclusion. Thus, she has failed to allege actual malice, and her defamation claim will be dismissed.

### B. False Light Invasion of Privacy

To state a claim for false-light invasion of privacy, a plaintiff must allege that the defendant:

> broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position. Further, the defendant must have known of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed.

*Puetz v. Spectrum Health Hosps.*, 919 N.W.2d 439, 448-49 (Mich. Ct. App. 2018) (cleaned up). A plaintiff must also allege that the broadcasted information must "lift the curtain of privacy on a subject matter that a reasonable man of ordinary sensibilities would find offensive and objectionable: supersensitiveness is not protected." *Cetera v. Mileto*, 995 N.W.2d 838, 848 (Mich. Ct. App. 2022) (quoting *Reed v. Ponton*, 166 N.W.2d 629, 630 (Mich. Ct. App. 1968)). In other words, the information must be about the plaintiff's "private life." *Id.* (quoting *Beaumont v. Brown*, 257 N.W.2d 522, 527 (Mich. 1977)).

None of Babbin's statements about Muirhead involved an invasion of her right to privacy. Babbin's letter to the DDA and her statements on Facebook[1] involve Muirhead's public activity, not her private life.  *See Cetera*, 995 N.W.2d at 459 (denying photographers' false-light claim because their customers' review only involved their public business practices).  As a result, the Court will grant Babbin's motion on this claim as well.

## IV. CONCLUSION

For the reasons above, the Court will grant Plaintiff Crystal Babbin's motion to dismiss Defendant Laura Muirhead's counterclaims (ECF No. 13).

An order will enter consistent with this Opinion.


Dated: April 7, 2026                          /s/ Hala Y. Jarbou
                                              HALA Y. JARBOU
                                              CHIEF UNITED STATES DISTRICT JUDGE

---

[1] The statute of limitations for a false-light claim is three years, *Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 160 (Mich. Ct. App. 2004), so, unlike Muirhead's defamation claim, her false-light claim may rely on Babbin's Facebook post and comment as alleged in her complaint.

10